UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| RONALD CHILDERS and LAKEISHA CHILDERS, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> DONALD GAGNE, ) <br> ) <br> Defendant. ) | No. 3:18-CV-252-TRM-DCP |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the Order of Referral [Doc. 90] of the District Judge.

Now before the Court is Plaintiffs' Motion for Default Judgment [Doc. 88] against Defendant Gagne. By way of background, the Court issued a Show Cause Order [Doc. 91], ordering Defendant Gagne to appear before the undersigned on November 12, 2019, to show cause why a default judgment should not be entered against him. On November 12, 2019, Attorney Bryce McKenzie appeared on behalf of Plaintiffs. Defendant Gagne did not appear. The Court set a hearing on damages pursuant to Federal Rule of Civil Procedure 55(b)(2) for January 15, 2020, at 9:30 a.m. On January 15, 2020, Attorney McKenzie appeared on behalf of Plaintiffs. Plaintiffs were also present and testified at the hearing. Defendant Gagne did not appear. Accordingly, for the reasons further explained below, the Court **RECOMMENDS** that Plaintiffs' Motion for Default Judgment [**Doc. 88**] be **GRANTED IN PART AND DENIED IN PART.**

## I.  BACKGROUND

First, the Court will first review the Complaint [Doc. 1] in this case. Next, the Court will briefly address the relevant procedural history. Finally, the Court will summarize the evidence presented during the January 15 hearing.

### A.  Plaintiffs' Complaint

The Complaint in this matter was filed on June 22, 2018, against Defendant Gagne and City of Oneida, Tennessee ("Oneida"). [Doc. 1].[1] Specifically, Plaintiffs alleged on June 22, 2017, they were working for a financial services company, and as part of their job responsibilities, they made field visits to homes of owners who were in default on their mortgages to deliver informational packages and take photographs of the residence. [*Id.* at ¶ 8]. On June 22, 2017, Plaintiffs made a field visit to a home located on 190 Church Road in Pioneer, Tennessee. [*Id.* at ¶ 9]. During the field visit, Mr. Childers wore a visible photo I.D. from a lanyard on his neck that identified him as an employee of National Mortgage Field Services. [*Id.* at ¶ 10]. Mr. Childers walked to the door of 190 Church Road and talked to a woman at the door, who said she was not the person listed in the paperwork. [*Id.* at ¶ 11].

The Complaint alleged that thereafter, Plaintiffs attempted to leave but a woman named Melissa Kid came to Plaintiffs' car, punching it and screaming at them. [*Id.* at ¶ 12]. In addition, James Kidd pulled his work truck across the road so that Plaintiffs could not leave. [*Id.* at ¶ 13]. Plaintiffs were trapped on the road when Defendant Gagne approached and identified himself as a police officer and purported to show his badge. [*Id.* at ¶ 14]. Defendant Gagne ordered Mr. Childers to exit the vehicle. [*Id.* at ¶ 16]. Mr. Childers refused because he felt threatened by

---

[1] The Complaint alleged violations of 42 U.S.C. § 1983 and negligence against Oneida. [Doc. 1 at ¶¶ 51-65, 71-77]. The District Judge entered summary judgment in favor of Oneida on October 1, 2019. [Doc. 84].

2

Defendant Gagne.  [*Id.*].  Defendant Gagne reached in the vehicle, opened the door, and physically attempted to remove Mr. Childers.  [*Id.* at ¶ 18].  In addition, Defendant Gagne drew his handgun and ordered Mr. Childers out of the car at gunpoint.  [*Id.* at ¶ 19].

The Complaint states that both Plaintiffs were reasonably placed in fear of imminent serious bodily injury by Defendant Gagne.  [*Id.* at ¶ 20].  After forcibly removing Mr. Childers from the car, Defendant Gagne slammed Mr. Childers against the side of the car, shut the door on his hand, and further assaulted him.  [*Id.* at ¶ 21].  Mr. Childers received medical treatment for his injuries, and the Complaint alleges that both Plaintiffs suffered emotional distress and reasonably feared for their safety as a result of the assault.  [*Id.* at ¶ 22].

The Complaint alleges that Defendant Gagne engaged in conduct that violated 42 U.S.C. § 1983 in violation of the Fourth and Fourteenth Amendments to the United Constitution and committed assault and battery.  [*Id.* at ¶¶ 29-50].

### B.  Procedural History

On September 12, 2018, the Clerk entered a default against Defendant Gagne.  [Doc. 20].  Subsequently, on October 11, 2019, Plaintiffs moved for a default judgment against Defendant Gagne.  As mentioned above, on October 17, 2019, the undersigned issued an Order to Show Cause [Doc. 91], ordering Defendant Gagne to appear before Court on November 12, 2019, to show cause as to why a default judgment should not be entered against him.  On November 12, 2019, Attorney Bryan McKenzie appeared on behalf of Plaintiffs.  Defendant Gagne did not appear.  During that hearing, the Court set a hearing on damages for January 15, 2020.

### C.  Evidence Presented

During the January 15 hearing, both Plaintiffs testified.  Mr. Childers testified that at the time of the incident, he was working as a field agent for credit lenders.  He explained that when

3

clients were behind on their mortgage, he delivered a letter and called them. In June, he attempted to deliver a letter to Amanda Mason at her house. He knocked on the door, and a woman answered. The woman who opened the door claimed that Amanda Mason did not reside at the home, and she refused to take Mr. Childers's letter. Mr. Childers took photographs of the house to verify that he was there and began walking to his car. At that time, the lady who answered the door came out of the house, screaming and kicking at Plaintiffs' car. Mr. Childers testified that he was not threatening to her and that he just got into his car.

Mr. Childers stated that as he and Ms. Childers were driving away, the woman started running across the yard and was screaming and tried to reach in the car to retrieve Plaintiffs' camera. At that point, several others pulled in front of Plaintiffs' car and blocked them in. The individuals told Plaintiffs that they had their own officer. Mr. Childers testified that they were referring to Defendant Gagne.

Mr. Childers testified that Defendant Gagne arrived in a Chevy-S10 truck. Mr. Childers stated that Defendant Gagne looked like a "bulldog looking for meat." Mr. Childers described Defendant Gagne as shaking and mad. Defendant Gagne asked Mr. Childers what he was doing and why he was there. Defendant Gagne identified himself as a police officer. Mr. Childers asked to see Defendant Gagne's badge, but Defendant Gagne flipped his wallet too fast. Mr. Childers stated that Defendant Gagne removed him from the vehicle and pulled a gun on him. Defendant Gagne pushed Mr. Childers against the car. Mr. Childers testified that another guy yelled a name at Ms. Childers, and Mr. Childers went towards him. Defendant Gagne then hit Mr. Childers in the back several times, claiming that he (Defendant Gagne) was keeping Mr. Childers under control.

Mr. Childers testified that during most of the incident, Ms. Childers was using her cellphone to record what was happening. Mr. Childers testified that the video recording, which was admitted as Exhibit 1, begins when the neighbors in the area began using their vehicles to block Plaintiffs' vehicle. The video does show that several individuals blocked Plaintiffs' vehicle, leaving Plaintiffs nowhere to go. Approximately, fourteen minutes into the video, Defendant Gagne arrives in ordinary clothes. Ms. Childers, who is on a cellphone with a dispatcher, tells the dispatcher that Defendant Gagne looked agitated.[2] Defendant Gagne approaches Plaintiffs' vehicle and purportedly shows his badge, although it is difficult to see his badge because he flips his wallet quickly. Defendant Gagne states that he is a police officer and asks, "What's going on?" The neighbors stand behind Defendant Gagne in close proximity to Plaintiffs' vehicle. Ms. Childers states that she and Mr. Childers cannot discuss matters while the neighbors are around but informs Defendant Gagne that Plaintiffs can talk to him. Defendant Gagne then accuses Plaintiffs of harassing the neighbors and yells at Plaintiffs to step out of the vehicle. Plaintiffs decline to do so. Defendant Gagne reaches inside the vehicle and opens the driver-side door where Mr. Childers is sitting. Defendant Gagne pulls out his gun and orders Mr. Childers to step out of the vehicle. Defendant Gagne pats Mr. Childers down and then calls someone on his cell phone. He then shuts the driver's side door of Plaintiffs' vehicle.

Later, another officer arrives in uniform, Officer Lewallen, and separates Defendant Gagne from Mr. Childers, and two other officers arrive on the scene. Ms. Childers appears to be crying and telling Officer Lewallen that Defendant Gagne grabbed Mr. Childers out of the vehicle and pulled a gun on her husband. In addition, Mr. Childers tells Officer Lewallen that Defendant

---

[2] Ms. Childers stays on a cellphone with a dispatcher throughout the incident, explaining to the dispatcher that she is scared.

Gagne shut Mr. Childers's hand in the door. Ms. Childers then tells Officer Lewallen what happened, beginning with why Plaintiffs were in the area.

At one point, Mr. Childers appears to walk towards someone who is not within the camera's view, and three officers, including Defendant Gagne, follow him.[3] Defendant Gagne grabs Mr. Childers by the back of his shirt and takes him to the front of the driver's side door of Plaintiffs' vehicle. Afterwards, the officers at the scene, including Defendant Gagne, walk away from Plaintiffs, and Ms. Childers tells the dispatcher that she believes Plaintiffs are okay now. An officer then asks Ms. Childers to show him what she has recorded. Ms. Childers agrees, and the recording stops.

Mr. Childers testified that immediately following the incident, he sought medical treatment, which included x-rays of his chest, hand, and back. Mr. Childers testified that he incurred $2,227.98 in medical bills. He stated that the doctor examined his pinkie finger because Defendant Gagne slammed the door on it. Plaintiffs submitted a collective exhibit, Exhibit 2, containing Mr. Childers's medical records and invoices for the charges incurred. He stated that he experiences difficulty with lifting his left hand above his left shoulder due to the incident. Further, Mr. Childers testified that the incident caused both Plaintiffs mental stress. In addition, Mr. Childers stated that the incident caused issues with his marriage to Ms. Childers.[4]

Ms. Childers also testified, stating that at the time, she was married to Mr. Childers and that they were working together. Ms. Childers explained that she and Mr. Childers had contracts with banks and mortgage lenders and that their job was to get the banks and mortgage lenders in

---

[3] The cellphone footage does not shown Mr. Childers either, but Ms. Childers can be heard, yelling, "No, Ron stop!"

[4] The Court notes that at the beginning of the hearing, Plaintiffs' counsel announced that Plaintiffs were in the process of a divorce.

6

touch with individuals who have defaulted on their loans. Ms. Childers testified that on the day of the incident, after the lady came out of the house screaming, the neighbors blocked them in and contacted Defendant Gagne. Ms. Childers testified that she felt very threatened, so she contacted dispatch. Ms. Childers stated that when Defendant Gagne arrived, he was already irate and that his demeanor was threatening. Ms. Childers stated that she did not know who Defendant Gage was when he exited his vehicle, but he identified himself as a cop. Ms. Childers stated that Defendant Gagne quickly flashed what he wanted Plaintiffs to believe was a badge. Ms. Childers stated that she and Mr. Childers tried to speak, but Defendant Gagne would not listen to them and that she did not feel safe. Ms. Childers was still on the telephone with dispatch and demanded that the dispatcher stay on the call because she felt threatened by Defendant Gagne.

Ms. Childers testified that Defendant Gagne did not physically assault her, but he told her many times to shut up. Ms. Childers stated that when Defendant Gagne pulled Mr. Childers out of the vehicle, Defendant Gagne already had his gun out. Ms. Childers told Defendant Gagne that officers were coming, and Defendant Gagne stated that he would find a reason to detain Plaintiffs. Ms. Childers testified that she believed Defendant Gagne would arrest or kill Mr. Childers. She stated that she was scared. Ms. Childers testified that Officer Lewallen arrived and was professional and controlled. Officer Lewallen separated Defendant Gagne and Mr. Childers.

Ms. Childers testified that since the incident, she trains employees differently and tells them, especially women, to make sure they have a partner for field visits. She also recommends that employees take classes on how to properly defend oneself. She testified that she makes sure she has mace, pepper spray, and a taser on field visits. She further stated that she sees a therapist for severe depression, anxiety, and post-traumatic stress. She stated that she has difficulty sleeping and was given medication. Ms. Childers testified that the incident led to the decline of her marriage

7

because it was "too much to handle." She testified that she is scared to go to work and that her numbers have decreased because she will not talk to anyone who appears confrontational.

## II. POSITIONS OF THE PARTIES

Plaintiffs move for an entry of default judgment pursuant to Federal Rule of Civil Procedural 55(b)(1) against Defendant Gagne. [Doc. 88]. In support of their request, Plaintiffs filed the Affidavit of Bryce McKenzie, their attorney. [Doc. 88-1]. Specifically, the Affidavit states that the Complaint was served on Defendant Gagne on July 12, 2018, and that he did not file a response to the Complaint. [*Id.* at ¶ 2]. Plaintiffs request $250,000 in compensatory damages and $250,000 in punitive damages. [*Id.* at ¶ 3]. In addition, Plaintiffs request post-judgment interest and the costs of this action. [*Id.*].

## III. ANALYSIS

The Court has considered Plaintiffs' Motion, along with the testimony presented at the hearing. Accordingly, for the reasons stated below, the Court **RECOMMENDS** Plaintiffs' Motion [**Doc. 88**] be **GRANTED IN PART AND DENIED IN PART.**

The Court will first discuss the standard with respect to default judgments pursuant to Rule 55 and then turn to Plaintiffs' requested amount of damages.

### A. Rule 55

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Following the entry of default, a party may apply for default judgment, and the Court may conduct a hearing – if needed, to perform an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter – prior to entering default judgment. Fed. R. Civ. P. 55(b). "Once the Clerk has

8

entered a default against a defendant, the Court must treat all well-pleaded allegations in the Complaint as true." *AF Holdings LLC v. Bossard*, 976 F. Supp. 2d 927, 929 (W.D. Mich. 2013) (citing *Thomas v. Miller*, 489 F.3d 293, 299 (6th Cir. 2007) (entry of default judgment "conclusively establishes every factual predicate of a claim for relief")).

In the present matter, the Clerk has entered a default against Defendant Gagne. The undersigned ordered Defendant Gagne to appear before the Court on November 12, 2019, to show cause as to why a default judgment should not be entered. Defendant Gagne failed to attend the November 12 hearing. Further, as mentioned above, Defendant Gagne also failed to attend the January 15 hearing on damages. Accordingly, the Court **RECOMMENDS** that a default judgment be entered against Defendant Gagne.

Taking as true the allegations in the Complaint [Doc. 1], the Court **INCORPORATES BY REFERENCE** the allegations set forth by Plaintiffs against Defendant Gagne. The Court accepts all such allegations, and specifically, the Court **FINDS**, based upon entry of default, that Defendant Gagne violated 42 U.S.C. § 1983 and committed assault and battery.

The Court will now turn to the amount of damages that Plaintiffs have requested.

### B.     Damages

As mentioned above, in their Motion, Plaintiffs requests $250,000 in compensatory damages and $250,000 in punitive damages. In addition, they move for post-judgment interest and the costs of this action. During the hearing, Plaintiffs argued that punitive damages are appropriate. They stated that Defendant Gagne used his position as an officer to inflict pain on Plaintiffs. Plaintiffs stated that Defendant Gagne should have cleared the road, but instead he pulled a gun on Mr. Childers. Plaintiffs asserted that their marriage is broken and that they have had a difficult time dealing with the post-traumatic effects of this incident.

9

As an initial matter, the Court notes that Plaintiffs did not differentiate the amounts each should be awarded but instead requested a total award of $500,000. While the Court will recommend that both Plaintiffs are entitled to an award, the Court finds it appropriate to address Plaintiffs' awards separately, especially in light of the differences in injuries between the two Plaintiffs.

The Court has reviewed the evidence in this case, including Plaintiffs' testimony, the medical records, and the video footage from the incident. It is clear from the evidence entered in this case that Plaintiffs experienced a frightening situation that was exacerbated by Defendant Gagne's actions. As shown in the video footage, when Defendant Gagne approaches Plaintiffs' vehicle, his demeanor is threatening toward Plaintiffs. He begins, almost immediately, accusing Plaintiffs of harassment. At this point, it is not clear if Defendant Gagne is an officer. He identifies himself as an officer, but he quickly flips his wallet, and therefore, his badge cannot be seen. The neighbors continued to yell at Plaintiffs in close proximity, despite Defendant Gagne's presence.

Specifically, with respect to Ms. Childers, although she was not physically assaulted, she felt unsafe and threatened by Defendant Gagne's presence, actions, and seizure of her and her husband. Ms. Childers watched her husband be forcibly removed from the vehicle at gunpoint. Ms. Childers testified that Defendant Gagne's actions made her believe that Mr. Childers was going to be arrested or killed. With respect to the emotional distress that she described, the Court finds Ms. Childers to be a credible witness. In describing this experience, Ms. Childers's facial expressions, tone of voice, and manner were convincing when she recounted the incident and the emotional distress that it caused. *See Rogers v. Cofield*, No. 08-CV-10684-MBB, 2011 WL 6140974, at *30 (D. Mass. Dec. 8, 2011) (stating that the jury could have found plaintiff suffered a considerable amount of emotional pain and suffering, explaining that plaintiff's facial

10

expressions, tone of voice, and manner were convincing). The incident clearly affected her mental well-being. For instance, she continues to see a therapist and was diagnosed with depression, anxiety, and post-traumatic stress from the incident. Further, since the incident, Ms. Childers has had trouble sleeping and is on medication for her mental health. She also testified that the incident caused issues with her marriage to Mr. Childers and has caused performance related issues at her job. In addition to her testimony, the Court was able to see and hear what occurred during the incident. Ms. Childers's tone of voice, manner, and actions during the incident are consistent with the emotional distress she described resulting from the incident. The Court notes that Ms. Childers's testimony is unrebutted.

Given the above evidence, the Court recommends that Ms. Childers be awarded $50,000 in compensatory damages and $50,000 in punitive damages. The Court finds these amounts appropriately compensate Ms. Childers for the emotional distress she suffered as a result of the incident but also accounts for the fact that she was not physically harmed. As mentioned above, with respect to her emotional distress, the Court finds Ms. Childers credible in that she experienced severe emotional distress from this incident. In addition, the Court finds a punitive damages award in the amount of $50,000 appropriate in order to punish Defendant Gagne for his willful actions in this case. *Williams v. Lake*, No. 1:13-CV-627, 2014 WL 5211430, at *2 (S.D. Ohio Oct. 14, 2014) ("Punitive damages are appropriate when the defendant acted wantonly and willfully, or was motivated in his actions by ill will or a desire to injure.") (quoting *Hagge v. Bauer,* 827 F.2d 101, 110 (7th Cir. 1987).

The Court has also considered the injuries sustained by Mr. Childers. As described above, the unrebutted evidence shows that Mr. Childers was removed from his vehicle with force at gunpoint. Mr. Childers testified that Defendant Gagne slammed his hand in the car door and that

11

Defendant Gagne punched his back several times. Defendant Gagne has not rebutted this testimony. Further, Mr. Childers submitted his medical records to show his injuries. Mr. Childers also testified that he has experienced mental stress, which lead to problems with his marriage, and that he continues to have physical issues as a result of Defendant Gagne's assault.

"This Court can consider damages awards in similar cases in assessing the propriety of the amount of damages Plaintiff seeks here." *Williams,* 2014 WL 5211430, at *2 (citing *Martell v. Boardwalk Enter., Inc.*, 748 F.2d 740, 752-53 (2d Cir. 1984)). The Court finds the decision in *Williams* helpful. In *Williams*, plaintiff was awarded a default judgment against defendant in the amount of $75,000 in compensatory damages, $75,000 in punitive damages, and attorney's fees and costs. *Id.* at *3. The evidence showed that when plaintiff was incarcerated and in handcuffs, defendant assaulted him by striking plaintiff multiples times on the head and body. *Id.* at *1. The plaintiff was taken to the prison infirmary where he was treated for soft-tissue injuries, abrasions, and pain. *Id.* The plaintiff's injuries did not immediately resolve, which required additional treatments. *Id.* The plaintiff testified in an affidavit that he still experienced periodic dizzy spells related to the assault and was treated for post-traumatic stress disorder. *Id.*

Similarly, while Mr. Childers's physical injuries were not severe, the Court notes that the unrebutted testimony shows that Defendant punched Mr. Childers in the back several times and slammed his finger in the car door. Further, Mr. Childers testified that he still experiences issues with being able to lift his left arm above his shoulder. In addition, to the physical trauma, Mr. Childers incurred medical expenses in the amount of $2,227.98 and experienced emotional distress from the incident. As mentioned above, Mr. Childers was forcibly removed from his vehicle at gunpoint and assaulted. Given the above, the Court recommends that Mr. Childers be awarded $100,0000 in compensatory damages and $100,0000 in punitive damages.

12

## IV. CONCLUSION

Based upon these findings and taking all well-pleaded actions in the Complaint as true as they relate to Defendant Gagne, the undersigned **RECOMMENDS**[5] as follows:

1. Plaintiffs' Motion for Default Judgment [**Doc. 88**] against Defendant Gagne be **GRANTED IN PART AND DENIED IN PART**;

2. That Defendant Gagne be **ADJUDGED** for violating 42 U.S.C. § 1983 and committing assault and battery; and

3. That Ms. Childers be awarded $100,000, and Mr. Childers be awarded $200,000, plus post-judgment interests and cost of this action.

Respectfully submitted,

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153-54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

13